# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| **BRIAN PETTY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | No. 3:05-0680 |
| ) | Judge Campbell |
| **METROPOLITAN GOVERNMENT OF** ) | Magistrate Judge Brown |
| **NASHVILLE-DAVIDSON COUNTY,** ) | |
| ) | |
| **Defendant.** ) | |

___

## SUPPLEMENTAL COMPLAINT
___

Brian Petty brings this action against the Metropolitan Government of Nashville-Davidson County ("Metropolitan Government") pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and states as follows:

## PARTIES

1) At all times relevant, Brian Petty is a citizen and resident of Davidson County, Tennessee, and is an employee of the Metropolitan Government of Nashville-Davidson County within the meaning of 38 U.S.C. § 4303(3).

2) At all times relevant, the Metropolitan Government is an employer within the meaning of 38 U.S.C. § 4303(4).

## JURISDICTION

3) This action arises pursuant to 38 U.S.C. § 4323, 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. § 2201, 28 U.S.C. § 1331, 28 U.S.C. § 1343 and Rule 57, Fed. R. Civ. P., and the Court has jurisdiction.

# FACTS

4) The Metropolitan Government has created a Department of Metropolitan Police ("Metro Police") which has been delegated the responsibility within the area of the Metropolitan Government for the preservation of the public peace, prevention and detection of crime, apprehension of criminals, protection of personal property and enforcement of laws of the State of Tennessee and ordinances of the Metropolitan Government.

5) On or about February 1, 1991, the Metropolitan Government hired Brian Petty as a police officer within the Department of Metropolitan Police with all the power, authority, and duties provided for police and law enforcement officers of counties and cities within the State of Tennessee.

6) While employed as a Metro Police officer, Brian Petty was a member of one of the uniformed services within the meaning of USERRA.

7) While employed as a Metro Police officer, Brian Petty was called to active duty in the U.S. Army, with the rank of captain, on or about December 1, 2003.

8) The U.S. Army caused Brian Petty to serve in the Middle East until his discharge under honorable conditions from the service on or about February 4, 2005.

9) In accordance with USERRA, Brian Petty timely notified the Metro Police of his intent for reemployment and tendered to the Metropolitan Government all of the documents necessary for reemployment and to which the Metropolitan Government was entitled under the law.

10) As a consequence, Brian Petty was returned to employment on or about March 21, 2005, but was not returned to a similar position, shift or status to that which he held prior to his activation for military service, as the law requires.

11) Immediately prior to his military activation, Brian Petty was a uniformed sergeant assigned to patrol duty in the West sector on the evening shift (2:30pm-11pm). He was not promptly reemployed and reassigned to patrol duty on the evening shift. Instead, he was assigned to a first shift desk, primarily answering phone calls from members of the public. Prior to the receptionist assignment, this position was held by a civilian employee. Petty worked in a series of clerical or desk jobs until his eventual termination.

12) Prior to and after Brian Petty's return to work on or about March 21, 2005, the Metro Police Department commenced an investigation into Petty's military service. In effect, Metro decided to second guess the military's decision to discharge Mr. Petty under honorable conditions.

13) Prior to reemployment with the Metropolitan Government, Brian Petty was required to take polygraph tests, psychological evaluations, drug tests, and medical evaluations. This occurred despite the fact that the U.S. Army conducted these same tests prior to Petty's discharge. These requirements violate USERRA.

14) Petty was further required to sign waivers for release of military and medical records. These requirements violate USERRA.

15) The Metro Police Department took the position, under color of law, after this action was filed, that section 7.7 of the Metropolitan Code required them to subject Petty to additional polygraph and physical exams before he could be reemployed since he was on leave for six months or longer. This code section directly conflicts with USERRA.

16) The Metro Police Department's reliance, under color of law, on section 7.7 of the Metropolitan Code is misplaced and in violation of section 4.12(C) of the Metropolitan Code, which dictates that all "former civil service employees will be granted reemployment rights as

provided by law." The Metro Police Department ignores the reemployment rights granted under USERRA.

17) Petty was further interviewed about events that occurred while he was in the military. In addition, the military was contacted in an effort to go behind his discharge under honorable conditions.

18) At an interview that took place on or about December 21, 2005, Petty told Metro Police investigator Kelvin Jenkins that USERRA only required him to provide certain, limited information and/or documentation about his military service to the Metro Police. Petty made similar statements to the Metro Police on other occasions.

19) Mr. Jenkins later determined that Petty had committed one or more disciplinary infractions due, in part, to Petty's assertion of his USERRA rights. Upon information and belief, Mr. Jenkins's superiors within the Metro Police reached the same determination due, in part, to Petty's assertion of his USERRA rights.

20) Petty was subject to an investigation by the Office of Professional Accountability ("OPA") and was forced to submit to a critical voice stress analysis ("CVSA") relating to matters prior to his discharge as well as the nature of his discharge.

21) Prior to being placed on desk duty, Petty was advised that he had "passed" and would be returned to full duty in the near future. Petty waited a reasonable period of time for a return to patrol duty, but he was forced to file this action to claim his rights pursuant to USERRA.

22) Since the filing of this action, the Metropolitan Police Department has undertaken a course of conduct to retaliate against Brian Petty.

23) The Metro Police Department reopened its OPA investigation by, among other things, conducting additional interviews relating to Petty's military service.

24) The Metro Police Department ordered Petty to submit to a second CVSA dealing with his military discharge and return from the military. The second CVSA took place on or about April 3, 2007. Petty answered during the examination that he had been "truthful on all police department documents when returning from the military Army Reserves," and the examiner found no deception in this or any of his other answers.

25) Because of the unwarranted investigation(s) into his military service and his discharge and the retaliatory measures taken against Petty for pursuing his USERRA rights, the Metro Police did not permit Brian Petty to sit for the lieutenant's exam, further causing actual injury.

26) On or about November 15, 2007, Metro Police Chief Ronal Serpas sent a letter to Petty charging him with violating Police Department rules on "False or Inaccurate Reports" and "Honesty & Truthfulness." The letter primarily accused Petty of withholding information about his military service and discharge from the Metro Police.

27) In response to Chief Serpas's letter, Petty requested a formal hearing before Deputy Chief Steve Anderson and a disciplinary board. Petty's disciplinary hearing took place on or about December 5, 2007. At the hearing, Deputy Chief Steve Anderson and the disciplinary board considered whether Mr. Petty withheld details about his military service and discharge and whether he told the Metro Police that he only had to disclose certain information under USERRA.

28) On or about December 7, 2007, Deputy Chief Anderson sent a letter to Petty notifying him that all of the charges were sustained and that Petty's actions required termination of his employment. The Metro Police thereafter took Petty off the payroll and required him to surrender his badge and gun.

29) The Peace Officer Standards and Training Commission ("POST Commission") is responsible for certifying police officers as eligible for service in the State of Tennessee. On or about February 20, 2008, the POST Commission sent a letter to Petty informing him that the Metro Police had requested that he be decertified. Upon information and belief, the Metro Police did, in fact, request Petty's decertification.

30) Petty appeared at a POST Commission hearing or about June 19, 2008, but no representative from the Metropolitan Government appeared. The Post Commission decided to place Petty's certification in suspended status pending the outcome of litigation, and it verbally instructed Petty that he cannot serve as a police officer in Tennessee until further notice. The Post Commission memorialized its decision to suspend Petty's certification in an order dated July 28, 2008.

31) Petty has not worked as a police officer since his termination from the Metropolitan Government.

32) Brian Petty has no plain, adequate or complete remedy at law.

33) Brian Petty is suffering and will continue to suffer irreparable injury because of the Metro Police Department's policy, practice, custom and usage of discriminating against service person's reemployment rights under USERRA and other law.

## COUNT 1

34) Brian Petty adopts and incorporates all of the prior allegations and averments stated herein before.

35) Brian Petty is the victim of unlawful discrimination in his efforts to seek re-employment.

36) The Metropolitan Government also willfully discriminated against Petty by terminating his employment and by causing the POST Commission to hold his certification in suspended status. Petty's military membership, service, and/or status caused the Metropolitan Government to take these actions. The Metropolitan Government would not have taken these actions in the absence of Petty's military membership, service, and/or status.

37) Upon information and belief, Brian Petty has lost pay and benefits as a result of Metropolitan Government's refusal to promptly reemploy him to a status and position that he would have held with reasonable certainty had he remained continuously employed.

38) He has lost prestige among his fellow police officers because of the unlawful actions by the Metro Police Department and has further suffered anguish and uncertainty as a result of Metro's unlawful discrimination.

39) The Metro Police Department violated USERRA in the manner described herein before.

40) Metropolitan Government's refusal to fully comply with USERRA is willful and deliberate.

## COUNT 2

41) Brian Petty adopts and incorporates all of the prior allegations, averments, and counts stated herein before.

42) After the filing of this action, the Metropolitan Government unlawfully retaliated against Brian Petty, despite the fact that Petty had a reasonable belief that he was the victim of discrimination and that he was protected pursuant to USERRA.

43) Brian Petty has a property right in his employment, including rights of advancement.

44) Brian Petty has been damaged for filing this action because he has not been returned to his former position, has lost pay, and has not been allowed to sit for the lieutenant's exam.

45) Brian Petty has suffered anguish and uncertainty regarding his career because of Metro's retaliatory conduct after this action was filed.

46) The Metropolitan Government also willfully retaliated against Petty by terminating his employment and by causing the POST Commission to hold his certification in suspended status. The Metropolitan Government took these actions as a result of Petty's assertions that USERRA only required him to provide certain, limited information and/or documentation about his military service to the Metro Police. The Metropolitan Government would not have taken these actions in the absence of Petty's assertions of his USERRA rights. Furthermore, Petty had a good faith basis for making such assertions.

## COUNT 3

47) Brian Petty adopts and incorporates all of the prior allegations, averments and counts stated herein before.

48) The Metro Police Department has deprived Brian Petty of the rights and privileges guaranteed to him by USERRA.

49) The Metro Police Department has subjected Brian Petty to deprivation of the benefits guaranteed by USERRA and section 4.12 (C) of the Metropolitan Code.

50) The Metro Police Department has acted under color of the law.

51) Brian Petty has suffered injury and damage because of the actions of the Metro Police Department.

52) Unless restrained, the Metro Police Department will continue to deprive Brian Petty and other similarly situated persons of their rights under USERRA and the Metropolitan Code.

## COUNT 4

53) Brian Petty adopts and incorporates all of the prior allegations, averments and counts stated herein before.

54) A dispute and controversy has arisen between the parties as to the authority and obligations that arise under USERRA in legal relation to section 7.7 of the Metropolitan Code and between section 4.12(C) of the Metropolitan Code and section 7.7.

55) It is necessary for the Court to determine the rights and protections under USERRA and to issue appropriate remedies as are appropriate to effectuate USERRA.

**Wherefore** Brian Petty prays:

1. That this Court determine Brian Petty's rights and the Metropolitan Government's obligations under USERRA and other laws, taking into consideration the Metropolitan Code.

2. That the Court declare and enter a judgment that the Metropolitan Government has discriminated against Brian Petty in violation of USERRA and other laws and further retaliated against him for pursuing his rights under USERRA and other laws.

3. That a judgment and permanent injunction be entered, reemploying Brian Petty to the same position, shift and status that he held prior to his activation for military service, including all promotions and pay increases for which he was entitled if he had not been activated.

4. That a judgment be entered that Brain Petty be paid all lost pay and benefits as a result of the Metropolitan Government's failure to promptly reemploy him, as well as its discrimination and retaliation against him.

5. That a judgment be entered awarding Brian Petty liquidated damages for willful violations of USERRA and other laws.

6. That injunctive relief be fashioned by the Court against the Metropolitan Government, the Metro Police Department, their agents, employees and those acting in concert with them to prevent them from denying Brian Petty his rights and remedies under USERRA and other laws.

7. That injunctive relief be fashioned by the Court against the Metropolitan Government, the Metro Police Department, their agents, employees and those acting in concert with them from retaliating against Brian Petty because he has asserted his rights and privileges pursuant to USERRA and other laws.

8. That a judgment be entered awarding attorney fees to Brian Petty.

9. That the Court award such general relief to which Brian Petty may be entitled.

Respectfully submitted,

/s/ James G. Stranch, III
James G. Stranch, III, #2542
Michael J. Wall, #024774
BRANSTETTER, STRANCH
   & JENNINGS, PLLC
227 Second Avenue North, Fourth Floor
Nashville, Tennessee 37201-1631
Phone: (615) 254-8801
Fax: (615) 255-5419
jgs@branstetterlaw.com
mwall@branstetterlaw.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was sent via the Court's electronic filing system on January 30, 2009, to:


Kevin C. Klein, #23301
METROPOLITAN DEPARTMENT
   OF LAW
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219-6300
Telephone: (615) 862-6341
Facsimile: (615) 862-6352
kevin.klein@nashville.gov

*Attorney for Defendant*

/s/ James G. Stranch, III
James G. Stranch, III